| | |
|---|---|
| **RAYMOND THIBODEAUX** | : |
| 744 Princeton Place, N.W. | |
| Washington, DC  20010 | : |
| | |
| and | : |
| | |
| **EMILY WAX** | : |
| 744 Princeton Place, N.W. | |
| Washington, DC  20010 | : |
| | |
| **Plaintiffs,** | : |
| | |
| v. | : |
| | |
| **KATHLEEN A. STERLING, M.D.** | : |
| 6410 Rockledge Drive, Ste. 503 | |
| Bethesda, MD  20814 | : |
| | |
| and | : |
| | **Case No: 8:17-cv-01352 PWG** |
| **NIZAMUDDIN J. MARUF, M.D.** | : |
| 6410 Rockledge Drive, Ste. 503 | |
| Bethesda, MD  20814 | : |
| | |
| and | : |
| | |
| **UROLOGICAL CONSULTANTS, P.A.** | : |
| 401 E. Jefferson St., Ste. 107 | |
| Rockville, MD  20852 | : |
| | |
| <u>Serve Registered Agent:</u> | : |
| Mark H. Ratner | |
| 401 E. Jefferson St., Ste. 107 | : |
| Rockville, MD  20852 | |
| | : |
| **EDWARD DUNNE, M.D.** | |
| 30 Quincy Street | : |
| Chevy Chase, MD | |

:

**Defendants.**

## FIRST AMENDED COMPLAINT
### (Medical Negligence)

## PARTIES

1.      Plaintiff Raymond Thibodeaux is an adult citizen who currently resides in the District of Columbia.

2.      Plaintiff Emily Wax is an adult citizen who currently resides in the District of Columbia.

3.      At all times material to this case, Plaintiffs ("Mr. and Mrs. Thibodeaux") have been legally married to each other.

4.   At all times relevant, Defendant Urological Consultants, P.A. was in the business of providing health care services, through its employees and/or real and/or ostensible agents in the Montgomery County, Maryland.

5.      At all times relevant hereto, Defendant  Nizamuddin J. Maruf, M.D. was a physician who held himself out as competent to practice within the specialty of urology, and at all times relevant herein was duly licensed in Maryland to provide health care services to persons in need thereof, including Plaintiff, Raymond Thibodeaux.

6. At all times relevant herein, Defendant Sterling and Defendant Maruf held themselves out as employees, principals and/or real and/or ostensible agents of HCP Urological Consultants, P.A.

7. A Statement of Claim against Defendants Urological Consultants, Kathleen Sterling, M.D., and Nizamuddin Maruf, M.D. was initially filed with the Maryland Health Claims Alternative Dispute Office ("HCADO") on April 27, 2017. Plaintiff's Expert Report and Certificate of Qualified Expert were also filed on that date. A request to waive out of HCAO was filed on May 3, 2017, and an Order was signed by HCADO Chair Harry Chase dated May 8, 2017, granting the request to waive out of HCADO.

8. At all times relevant hereto, Defendant, Edward Dunne, M.D. was a physician who held himself out as competent to practice within the specialty of urology, and at all times relevant herein was duly licensed in Maryland to provide health care services to persons in need thereof, including Plaintiff, Raymond Thibodeaux.

9. A Statement of Claim against Defendant Dunne was initially filed with the Maryland Health Claims Alternative Dispute Office ("HCADO") on May 18, 2018, and an Amended Statement of Claim was filed on June 4, 2018. Plaintiff's Expert Report and Certificate of Qualified Expert were also filed on May 18, 2018. A request to waive out of HCAO was filed on June 15, 2018, and an Order was signed by HCADO Chair Harry Chase dated June 18, 2018, granting the request to waive out of HCADO

10. Based on the complete diversity of the parties, jurisdiction is proper in the United States District Court for Maryland, pursuant to 28 U.S.C. §1332. Venue is proper

in the Southern Division since all defendants reside in Montgomery County, Maryland and plaintiffs reside in Washington, D.C.

11. The matter in controversy well exceeds the sum or value of $75,000.

## FACTS

12.    On Saturday, June 21, 2014, Raymond Thibodeaux, age 49, experienced an acute episode of blood in his urine, urinary retention and back pain.

13.    Mr. Thibodeaux was very concerned, so he went to Sibley Hospital's Emergency Department for treatment.

14.    Mr. Thibodeaux reported this was a new problem. He had no prior history of trauma, kidney stones or prostate infections.

15.    His white blood count was 9.5, which was within normal limits.

16.    Mr. Thibodeaux was prescribed an antibiotic and told to follow up with Dr. Edward Dunne, a local urologist.

17.     On Tuesday, June 24, 2014, Mr. Thibodeaux was seen by Defendant Dunne.

18.    Mr. Thibodeaux listed the blood in his urine as his main complaint, along with back pain and "unsatisfying pee."

19.    Defendant Dunne's plan of care was to continue the same medications and have the patient return two days later.

20.    Mr. Thibodeaux returned to Defendant Dunne on Thursday, June 24, 2014. Mr. Thibodeaux was asked to return again the next day.

21.    Mr. Thibodeaux returned June 27th and was told to come back in a few weeks. On that date his post void residual was 66 ccs.

22. Mr. Thibodeaux returned August 15, 2014. At that time he was not experiencing acute blood in his urine. Mr. Thibodeaux was told to return as needed.

23. On September 8, 2014 Mr. Thibodeaux returned because the symptoms returned. Mr. Thibodeaux's post void residual was 154 ccs. Defendant Dunne performed a transrectal ultrasound of the prostate and noted significant bladder thickening.

24. Defendant Dunne was not in Mr. Thibodeaux's insurance network, so Defendant Dunne referred Mr. Thibodeaux to Defendants Kathleen Sterling, M.D. and Urological Consultants, for further work up and treatment.

25. On or about September 16, 2014, Mr. Thibodeaux was seen by Defendant Sterling and his past medical records were reviewed by Defendant Sterling, including his history of episodes of acute blood in his urine and the finding of bladder thickening.

26. No work up for cancer was performed or suggested. In fact, Mr. Thibodeaux was assured by Defendant Sterling that he could address these concerns involving his prostate at his convenience and again suggested a TUIP in the future.

27. Defendant Sterling had just finished her residency at the end of June 2014. As such, Defendant Sterling's office notes were reviewed by Defendants' agent, employee and/or principal, Defendant Dr. Nizamuddin J. Maruf, on or about December 9, 2014, who agreed with the decision not to work up the patient for the hematuria and signed off on Defendant Sterling's care.

28. Mr. Thibodeaux was told by Defendants that he could schedule the additional procedure at his leisure; that he simply had a problem with his prostate that many men control with medication and diet changes; and that he could elect to have a procedure, but

that there was no urgency. He was not told he could have cancer. No imaging to rule out kidney or bladder cancer was ordered or recommended to Mr. Thibodeaux at any time before the fall of 2015.

29.    Mr. Thibodeaux returned to Defendant Sterling on or about February 5, 2015, and was assured that cancer was not a concern, and told to schedule a cystoscopy at his leisure given his future travel schedule for work.

30.    On or about August 28, 2015, Defendant Sterling confirmed her knowledge of the prior unexplained episodes of blood in the urine in her office note.  She performed a cystoscopy and easily identified a 1 cm tumor in Mr. Thibodeaux's bladder.

31.    On or about September 24, 2015, at Sibley Hospital, Mr. Thibodeaux underwent a resection of his bladder tumor.

32.    On or about October 2, 2015, Mr. Thibodeaux's resected tumor was confirmed to be high-grade bladder cancer.

33.    On or about October 5, 2015, Mr. Thibodeaux met with Dr. Sterling in her office to discuss the pathology. Additional pelvic imaging was finally ordered by Defendants.

34.    Mr. Thibodeaux was then also diagnosed with metastatic renal cancer.

35.    The cancerous tumor in his right kidney was more than 10 cm by the time it was radiographically diagnosed by Defendants on or about October 8, 2015.

36.    The untreated cancer in the right kidney was allowed to spread to Mr. Thibodeaux's lungs due to the delay in diagnosis.

37.     The Defendants did not work Mr. Thibodeaux up for bladder cancer or kidney cancer before October 2015.

38.     The Defendants did not tell Mr. Thibodeaux he could have kidney or bladder cancer based on his episodes of unexplained frank blood in his urine, or other symptoms.

39.     Mr. Thibodeaux was not offered any imaging to detect his kidney or bladder cancer by the Defendants between October 2014 and October 1, 2015, nor was his blood tested.

40.     Mr. Thibodeaux is married and has two young children.

41.     Mr. Thibodeaux has terminal cancer.

42.     Plaintiff Raymond Thibodeaux has been unable to return to work as a result of the complications and his medical course caused by the Defendants' failure to properly work up his symptoms and timely diagnose his cancers. He has been unable to work, provide for his family, care for his children, and has incurred a very substantial past and future wage loss.

43.     Plaintiff has incurred and will continue to incur substantial medical bills.

44.     Mr. Thibodeaux has endured, and will continue to endure, significant pain and suffering.

45.     The injuries and damages sustained by Mr. Thibodeaux have had a negative impact on the marital relationship, and his relationship with his young children.


## COUNT I
**(Medical Negligence)**

46.     Plaintiffs incorporate, by reference, paragraphs 1 through 44 above.

47.     Plaintiffs further allege that the Defendants had a duty to provide Plaintiff Raymond Thibodeaux with medical care and treatment consistent with national applicable standards of care under the same or similar circumstances.

48.     Plaintiffs further allege that the Defendants, through their agents, servants and/or employees, violated the national standards of care as practiced by reasonably competent practitioners under the same or similar circumstances, and, as a proximate result, the Plaintiff Raymond Thibodeaux suffered physical injuries, mental anguish, permanent physical deficits, disfigurement, past and future economic losses, past and future medical expenses, and loss of his chance of survival, and other damages.

49.     The breaches of the national standard of care by the Defendants include, but are not limited to the following:

a.      failure to perform timely and appropriate examinations and evaluations;

b.      failing to obtain and record adequate history of presenting illness, signs and symptoms and an adequate physical examinations;

c.      failing to promptly order imaging and perform other tests to rule out/diagnose kidney and/or bladder cancer;

d.      failure to inform the patient of the risk of cancer and his options in terms of ruling out cancer in a timely fashion;

e.      providing the patient with false assurances that he did not have cancer when in fact he was a higher risk for cancer and low risk imaging and testing was readily available to make that diagnosis in a timely fashion to save his life;

f.	failure to timely and  properly treatment Mr. Thibodeaux; and

g.	the Defendants were otherwise negligent;

50.	The Defendants failed to provide the Plaintiff Raymond Thibodeaux with medical care and treatment required by the national standard of care under the same or similar circumstances.

51.	Had the standard of care been followed by these Defendants, the cancers would have been detected early and could have been treated, including the simple removal of the kidney, and Mr. Thibodeaux would have been able to return to work and resume his normal life.

52.	As a direct and proximate result of Defendants' negligent acts and/or omissions, the Plaintiff Raymond Thibodeaux suffered severe physical injuries, has suffered physical pain and mental anguish,  has incurred medical bills and will continue to incur medical bills, has sustained a loss of wages and future wage-earning capacity, lost his chance to survive and other damages, has and will continue to experience pain and suffering, and will incur substantial expenses for medical care and treatment for the remainder of his lifetime.

53.	As a further direct and proximate result of the negligent acts and/or omissions of the Defendants, the Plaintiff Raymond Thibodeaux has suffered a loss of enjoyment of life and will continue to suffer a loss of enjoyment of life for the remainder of his lifetime.

WHEREFORE, Plaintiffs, demands judgment against Defendants, jointly and severally, in excess of the statutory jurisdictional minimum, plus costs and interest.

## COUNT II
### (Lack of Informed Consent)

54.     Plaintiffs incorporate herein by reference the allegations contained in numbered paragraphs 1 through 52.

55.     Mr. Thibodeaux was never informed of the option have additional imaging and testing in a timely fashion to rule out/detect bladder or kidney cancer.

55.      Mr. Thibodeaux was never informed of the high risk he faced that he had kidney or bladder cancer given his acute episodes of blood in the urine.

56.     Mr. Thibodeaux was never informed of the fact that he could have an infection and have cancer and that cancer had not been ruled out by any of the testing done.

57.     Had Mr. Thibodeaux been informed of the recognized options and the known risks, he would have elected to be imaged and tested in a prompt fashion, and he would not have terminal cancer.

58.     Any reasonable patient would have elected to be promptly worked up to rule out or diagnose cancer, if the options and risks had been explained in a timely fashion.

59.     The failure of the Defendants to provide informed consent was a proximate cause of the significantly delay in the diagnosis of both cancers and was the proximate cause of Mr. Thibodeaux's loss of chance of survival.

60.     As a result of the Defendants' negligence, Plaintiffs have suffered economic damages, physical pain and injury, and severe and enduring emotional distress and Mr. Thibodeaux has lost his chance of survival of his cancer.

WHEREFORE, Plaintiffs, demands judgment against the Defendants, jointly and severally, in excess of the statutory jurisdictional minimum, plus costs and interest.

## Count III
## Loss of Consortium – Damage to Marital Relationship

61.     Plaintiffs incorporate, by reference, paragraphs 1 through 60 above.

62.     Plaintiffs Raymond Thibodeaux and Emily Wax are husband and wife and were so at the time of the injuries at issue.

63.     As a result of the negligence of the Defendants aforesaid, individually, vicariously, jointly and severally, the Plaintiffs Raymond Thibodeaux and Emily Wax have suffered and will continue to suffer damage to their marital relationship, loss of household services, and loss of consortium, future lost wages, lost income for Ms. Wax and loss of care and guidance of the children.

WHEREFORE, Plaintiffs, demands judgment against the Defendants, jointly and severally, in excess of the statutory jurisdictional minimum, plus costs and interest.

Respectfully submitted,


By:     /s/
        Catherine D. Bertram  (#07715)
        BERTRAM LAW GROUP
        1100 Vermont Ave., NW, Ste. 500
        Washington, DC 20005
        cbertram@blg-dc.com
        (202) 803-5800
        (202) 803-6814 (fax)

        *Counsel for Plaintiffs*