## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

RAYMOND THIBODEAUX, *et. ux.*       *

      **Plaintiffs,**           *

**v.**                           *      **Case No. 8:17-cv-01352-PWG**

**KATHLEEN STERLING, M.D.,** *et. al.*   *

      **Defendants.**          *

*    *    *    *    *    *    *    *    *    *    *    *    *    *

### MEMORANDUM OPINION

    Plaintiffs Raymond Thibodeaux and Emily Wax brought this medical malpractice action against Defendants for allegedly failing to timely diagnose Mr. Thibodeaux's cancer. The matter is scheduled for trial in 2021. Defendants filed twelve motions in limine seeking the exclusion of certain claims and testimony. Plaintiffs filed an omnibus motion in limine regarding four evidentiary and choice-of-law issues.[1] This Memorandum Opinion and Order addresses all of these motions, except for Defendant's motion to exclude Plaintiffs' experts' testimony on the issue of causation, ECF No. 70, which will be addressed in a separate opinion. For the reasons discussed below, Defendants' motions addressed herein are DENIED. Plaintiffs' motion is DENIED in part and GRANTED in part.

### Background

    Mr. Thibodeaux initially saw the Defendant physicians in the summer of 2014 after finding blood in his urine. Am. Compl. at 4, ECF No. 31. Plaintiffs, a married couple, allege that Drs. Edward Dunne, Kathleen Sterling, and Nizamuddin Maruf did not order or

---

[1] The motions are fully briefed. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018).

recommend diagnostic procedures to screen for cancer in violation of professional standards of care.  *Id.* at 2, 8.  Mr. Thibodeaux was ultimately diagnosed with bladder cancer and metastatic kidney cancer in the fall of 2015.  *Id.* at 6.

Plaintiffs allege medical negligence, lack of informed consent, and loss of consortium.  *Id.* at 7–11.  Defendants contend they acted in accordance with professional standards of care and assert affirmative defenses such as contributory negligence by Mr. Thibodeaux.  *See* Defs.' Answers, ECF Nos. 32, 42.  Ahead of trial, the parties filed motions in limine regarding expert testimony, choice of law, and presentation of evidence.

<u>Discussion</u>

**A. Defendants' Motions in Limine**

**I.**

Dr. Dunne asks the Court to preclude Plaintiffs from questioning him regarding or introducing evidence of information or videos from the website of his employer, Foxhall Urology.[2]  Dr. Dunne argues that this information and the videos are not relevant to a jury's determination of whether Dr. Dunne complied with the standard of care or whether his alleged breach of the standard of care caused Mr. Thibodeaux's alleged injuries.  ECF No. 82.  At the time Dr. Dunne treated Mr. Thibodeaux, the Foxhall Urology website allegedly contained links and information from the Urological Care Foundation about potential symptoms of renal cancer.  *See* ECF No. 102, Ex. 1, Dr. Dunne Depo. Tr., 81:4-12.  It also allegedly contained a video about nephrectomy as a treatment for renal cancer.  *See id.* at 34:10–35:11.  During his deposition, Dr. Dunne stated that he did not know what was on the website at the time but then later said that the information was accurate unless there was something he was not aware of.  *See* ECF No. 82, Ex.

---

[2] Mot. in Lim. to Exclude Info. from Website, ECF No. 82.  Plaintiffs' response brief was filed as ECF No. 106.

A, Dr. Dunne Depo. Tr., 33:5-8, 34:10-35:17.  Mr. Thibodeaux stated in his deposition that he

did not look at the links or videos on the website.  *See* ECF No. 82, Ex. B, Thibodeaux Depo.

Tr., 75:16-20.  Because Dr. Dunne did not know what was on the website and Mr. Thibodeaux

did not look at the website, Dr. Dunne argues that the information is not relevant under Federal

Rule of Evidence 402.

In addition, Dr. Dunne argues that even if the information is relevant, it should be

excluded under Federal Rule of Evidence 403 because it has no probative value and that any

probative value it does have would be substantially outweighed by confusing the jury.  Dr.

Dunne cites *Rodriguez v. Clarke*, 926 A.2d 736, 755 (2007) and *Greater Metro. Orthopaedics,*

*P.A. v. Ward*, 810 A.2d 534, 537–38 (2002) for the propositions that in Maryland, expert

testimony is required to establish negligence, causation, and damages in medical malpractice

cases.  Dr. Dunne argues that allowing the jury to consider information from the website would

lead the jury to consider improper evidence.

In response, Plaintiffs argue that the information is relevant and admissible under Federal

Rule of Evidence 402 and it does not matter if Dr. Dunne recalled what was on the website at the

time or if Mr. Thibodeaux viewed them.  ECF No. 106.  During his deposition, Dr. Dunne stated

that the information on the website was accurate.  Plaintiffs argue that the information on the

website is relevant to Dr. Dunne's credibility about causes of blood in the urine and the

availability of nephrectomy as a curative treatment for renal cancer.  In addition, Plaintiffs argue

the information is relevant to Dr. Dunne's knowledge and understanding of the causes of the

blood in Mr. Thibodeaux's urine and the means of diagnosing and treating the cause.

The disputed information from the website is relevant under Federal Rules of Evidence

401 and 402 as to Dr. Dunne's credibility and his consideration of causes and treatment for  Mr.

Thibodeaux's renal cancer.[3]   For the same reasons, under Federal Rule of Evidence 403 its probative value is not substantially outweighed by prejudicial effect.   The cases cited by Dr. Dunne do not provide to the contrary.   In *Rodriguez v. Clark*, the Maryland Court of Appeals affirmed a grant of summary judgment by the Circuit Court where all of Plaintiffs' expert testimony was excluded.   *Rodriguez v. Clarke*, 926 A.2d at 757.   In *Greater Metro. Orthopaedics, P.A. v. Ward*, the Maryland Court of Special Appeals stated that "[w]hether expert testimony is necessary to prove the causal relationship between a defendant's negligence and a Plaintiffs' alleged damages is determined on a case-by-case basis." 810 A.2d at 537.   But neither case dealt with relevance or probative versus prejudicial value of evidence or testimony at issue here.   Therefore Dr. Dunne's motion to preclude testimony and evidence regarding information on his employer's website, ECF No. 82, is denied.

## II.

Defendants ask the Court to exclude Plaintiffs' informed consent claim.[4]   They argue that an alleged failure to offer or recommend tests cannot form the basis of an informed consent claim under Maryland law, citing *Reed v. Campagnolo*, 630 A.2d 1145 (Md. 1993).   ECF No. 84 at 1.   Lack of informed consent is the second of three counts Plaintiffs allege, the others being medical negligence and loss of consortium.   Am. Compl. at 10–11, ECF No. 31.   Plaintiffs allege Mr. Thibodeaux was "never informed" of his cancer risk, nor testing and imaging options.   *Id.* Defendants contend this allegation is properly asserted in a medical malpractice claim, not an informed consent claim.   ECF No. 84 at 2.   They ask for all testimony and opinions regarding the claim to be excluded.   *Id.* at 3.

---

[3] Arguably, the statements contained in the materials posted on the website also are admissions by a party opponent under Fed. R. Evid. 801(d)(2)(B).

[4] Mot. in Lim. to Exclude Informed Consent Claim, ECF No. 84.   Plaintiffs' response brief was filed as ECF No. 109.

In *Reed*, the Maryland Court of Appeals answered certified questions of law from this Court. 630 A.2d at 1146. The Reeds alleged their physician failed to inform them of the availability and need for diagnostic testing that would have revealed birth defects in their fetus. *Id.* One of the questions concerned whether the continuation of a pregnancy required the informed consent of the patient. *Id.* at 1152. The court answered in the negative, holding that "one's informed consent must be to some treatment." *Id.*

Plaintiffs argue that Defendants' request actually is a dispositive motion masquerading as an in limine motion, and should not be granted at this late stage given that it is not based on new information. ECF No. 109 at 1. They also argue that *Reed*'s holding was narrow and that the informed consent claim is allowed under both Maryland and District of Columbia law. *Id.* at 1–2. Plaintiffs point to *McQuitty v. Spangler*, 976 A.2d 1020, 1022 (Md. 2009), which held that a lack of informed consent claim may be viable even without an "affirmative violation of the patient's physical integrity." Plaintiffs argue Mr. Thibodeaux had a right to be informed of his evaluation and treatment options and of the possibility that cancer could be causing his symptoms. ECF No. 109 at 2–3.

Motions in limine are generally brought "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Defendants here do not seek to limit potentially prejudicial evidence, but instead seek the wholesale exclusion of Plaintiffs' informed consent claim. A motion in limine is not the appropriate procedural vehicle to dismiss a claim. *See* 21 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 5037.18 (2d ed.). "The use of motions in limine to summarily dismiss a portion of a claim has been condemned." 75 Am. Jur. 2d Trial § 42. This Court has strongly discouraged such motions that "sneak up in limine clothing shortly before

trial, after the deadline for orderly filing of summary judgment motions has passed." *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987). A party generally cannot move for summary judgment more than 30 days after the close of all discovery. Fed. R. Civ. P. 56(b). That deadline in this case has passed. As indicated in the Scheduling Order in this case, ECF No. 19, which was extended several times, if any of the parties wanted to file a dispositive pretrial motion, they were required to indicate this in a status report at the close of discovery with a description of the factual and legal basis of such a motion. Here Defendants complied with these procedures with respect to their motion to exclude the causation opinions of Plaintiffs' experts, ECF No. 70, but did not otherwise indicate their intention to file a motion for summary judgment on the informed consent claim. ECF No. 47.

Even if the motion were timely brought, it would still be denied at this stage. It is true *Reed* held that informed consent must be in relation to some treatment. 630 A.2d at 1152. Whether health care providers have "a duty to offer or recommend the tests is analyzed in relation to the professional standard of care," meaning a claim sounding in medical malpractice, not that of informed consent. *Id*. But the Maryland Court of Appeals subsequently clarified its holding in *McQuitty*, recognizing that the crux of an informed consent claim is the failure to give a patient information material to her decision whether to undergo a treatment. 976 A.2d at 1030. An "affirmative physical invasion" is not required to sustain a claim alleging the lack of informed consent. *Id.* at 1038–39. Informed consent involves "the healthcare provider's duty to provide information, rather than battery or the provider's physical act." *Id.* In so holding, the court allowed a verdict to stand against a doctor who allegedly failed to tell a patient about the option of delivering her baby by Cesarean section sooner in her pregnancy, when complications first arose. *Id.*

Regarding the claims against Dr. Dunne (for which D.C. law applies, as discussed further below in section B.I), the District of Columbia Court of Appeals has not specifically held that an informed consent claim may be sustained in the absence of a physical act or some proposed treatment.  The court has instructed in broad terms:

> The test for mandatory disclosure of information on treatment of the patient's condition is whether a reasonable person in what the physician knows or should know to be the patient's position would consider the information material to his decision. The information is material if the reasonable person in what the physician knows or should know to be the patient's position would be likely to attach significance to the risks in deciding to accept or forego the proposed treatment.

*Crain v. Allison*, 443 A.2d 558, 562 (D.C. 1982) (citing *Canterbury v. Spence*, 464 F.2d 772, 787 (D.C. Cir. 1972)). Whether Defendants failed to provide material medical information to Mr. Thibodeaux to allow him to make a reasonable decision on his course of treatment, or lack thereof, is a question for the jury.  *See, e.g.*, *Sard v. Hardy*, 379 A.2d 1014, 1023 (Md. 1977). Therefore Defendants' motion in limine to exclude Plaintiffs' informed consent claim, ECF No. 84, is denied.

### III.

Defendants ask this Court to exclude any testimony by Plaintiffs' experts that relies on medical literature or publications not cited in their reports or depositions.  ECF No. 85.  Plaintiffs say they do not intend to offer any medical literature beyond what has already been cited in the record.  ECF No. 100.  Therefore, Defendants' motion in limine regarding this issue, ECF No. 85, is denied as moot.

### IV.

Defendants ask this Court to exclude any testimony by Plaintiffs' experts concerning Mr.

Thibodeaux's life expectancy.[5]  Their motion is based on several arguments.  First, Defendants say the expected testimony will not adequately take into account Mr. Thibodeaux's recent medical treatments and will rely on outdated survival statistics.  *Id.* at 3.  Because of those deficiencies, Defendants contend the testimony will not be "based on sufficient facts or data."  Fed. R. Evid. 702(b).  Second, they say the generalized and statistical nature of the testimony would be unduly speculative.  *Id.*  Under Federal Rule of Evidence 403, they argue the potential to confuse and mislead the jury substantially outweighs the probative value of the testimony.  *Id.*

Plaintiffs say the survival statistics on which their experts rely are appropriate, because they come from the edition of the Cancer Staging Manual, published by the American Joint Committee on Cancer ("AJCC"), that should be used for patients diagnosed with cancer at the time Mr. Thibodeaux received his diagnosis.  ECF No. 101 at 1.  Plaintiffs argue the fact that Mr. Thibodeaux remains alive and previously responded well to therapy does not make expert testimony about his life expectancy inadmissible.  *Id.* at 2.

This Court must ensure that expert testimony is both relevant and reliable.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  This gatekeeping task "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Id.* at 592–93.  The anticipated use of cancer survival rates by Plaintiffs' experts meets that bar.  First, testimony regarding reduced life expectancy is relevant to determining the harm Mr. Thibodeaux allegedly suffered because of his late diagnosis.  Second, the testimony is reliably founded, because the survival data come from widely accepted publications and organizations that compiled statistics long before and independent of this litigation.  *See* Fed. R.

---

[5] Mot. in Lim. re Life Expectancy, ECF No. 86.  Plaintiffs' response brief was filed as ECF No. 101.

Evid. 702(b) Advisory Committee's note to 2000 amendments.   For instance, Dr. Schneider relied on observed survival rates for patients with kidney cancer in forming his opinion.   The data were reviewed by the AJCC and published in its authoritative guide to cancer staging.

Defendants oppose this testimony because of its reliance on "outdated survival statistics that do not address [Mr. Thibodeaux's] patient-specific prognostic factors and response to medical treatment."   ECF No. 86 at 3.   Defendants seem to argue that Mr. Thibodeaux's continued survival is at odds with generalized life expectancy statistics.   These objections go to the weight of the testimony, not its admissibility.   "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."   *Daubert*, 509 U.S. at 596. Juries are capable of properly weighing commonplace survival statistics and understanding that Mr. Thibodeaux may not fall exactly into a median patient forecast.   Therefore Defendants' motion in limine to exclude testimony by Plaintiffs' experts concerning Mr. Thibodeaux's life expectancy, ECF No. 86, is denied.

## V.

Defendants ask this Court to prevent Plaintiffs' expert, Dr. Schneider, from testifying about medical expenses that Mr. Thibodeaux incurred as a result of Defendants' alleged failure to timely diagnose his kidney and bladder cancers.[6]   Had Mr. Thibodeaux been diagnosed with cancer in 2014 during his initial appointments, he still would have incurred medical expenses, such as monitoring to ensure his renal cancer did not recur.   *Id.* at 2.   Defendants argue that Plaintiffs and their expert have failed to differentiate between the expenses caused by the alleged negligence and those Mr. Thibodeaux would have faced anyway.   *Id.*

---

[6] Mot. in Lim. re Medical Expenses, ECF No. 87.   Plaintiffs' response brief was filed as ECF No. 107.

Plaintiffs say Dr. Schneider will testify that all treatments were necessitated by the alleged negligence of Defendants, with the exception of the nephrectomy and bladder surgery, as those would have been the appropriate course of treatment had the diagnoses happened in 2014. ECF No. 107 at 1.  Plaintiffs say they will not present to the jury evidence about the expenses for the nephrectomy or bladder surgery. *Id.*

There is a sufficient evidentiary basis from which a jury could determine which of Mr. Thibodeaux's medical expenses were caused by the allegedly delayed diagnosis.  Calculating medical expenses, though imperfect, is the province of the jury.  *See, e.g.*, *Monias v. Endal*, 623 A.2d 656, 658 (Md. 1993) (affirming damages for medical expenses for delayed breast cancer diagnosis).  *See also District of Columbia v. Howell*, 607 A.2d 501, 506 (D.C. 1992) (noting that a plaintiff is not required to prove damages with "mathematical certainty," but must provide a "reasonable basis on which to estimate damages").  This dispute concerns a question of fact, appropriate for the jury to resolve.  Therefore Defendants' motion in limine regarding medical expenses, ECF No. 87, is denied.

## VI.

Defendants next ask this Court to preclude Plaintiffs' expert, Dr. Michael Palese, from offering opinions on causation or damages.  ECF No. 88.  Although Dr. Palese discussed causation in his written report and Plaintiffs said he would testify to "standard of care, causation and damages" in their preliminary Rule 26(a)(2) statement, Plaintiffs affirm they do not intend to question Dr. Palese on the issues of causation or damages.  ECF No. 104.  I will hold them to that representation.  Therefore Defendants' motion in limine on this issue, ECF No. 88, is denied as moot.

## VII.

Defendants ask this Court to exclude evidence that Ms. Wax, Mr. Thibodeaux's spouse, suffered economic damages.  ECF No. 89.  They argue Plaintiffs have failed to produce expert testimony on the subject and have not itemized such expenses as childcare.  *Id.* at 1–2.  Plaintiffs say they do not intend to offer evidence of past childcare expenses or Ms. Wax's potential lost income related to foregone professional advancement opportunities as she cared for her husband.  ECF No. 103.  However, Plaintiffs oppose the exclusion of this evidence insofar as it relates to the non-economic injuries they suffered.  *Id.* Because Defendants have only requested the exclusion of certain *economic* damages, Defendants' motion in limine, ECF No. 89, is denied as moot.  Because Federal Rule of Evidence 105 recognizes that evidence may be relevant to some issues but not to others, and admissible against some parties but not others, Plaintiffs are permitted to introduce evidence regarding their reliance on child care providers and Ms. Wax's alleged lost professional opportunities provided they can establish that it is relevant for non-economic damages or another purpose, subject to objection at trial by Defendants.  Whether this evidence ultimately is admitted or not is best deferred until trial.

## VIII.

Defendants ask this Court to preclude Plaintiffs' expert, Dr. Singer, from discussing his own kidney cancer diagnosis.  ECF No. 90.  Dr. Singer mentioned the matter during his deposition.  *Id.*  Plaintiffs say they do not intend to present this information to the jury.  ECF No. 102.  Therefore Defendants' motion in limine on this issue, ECF No. 90, is denied as moot.

## IX.

Defendants ask this Court to exclude testimony by Plaintiffs' expert, Dr. Kenneth Reagles, regarding Plaintiffs' claims for loss of past and future earnings and loss of ability to

work.   ECF No. 91.   They argue, in part, these harms are too speculative because Mr. Thibodeaux has continued to work.  *Id.* at 1.   Plaintiffs say this issue is moot and no longer speculative, given that Mr. Thibodeaux suffered a stroke and new metastatic lesions to the brain in February 2020.  ECF No. 99.  Plaintiffs say he has not been able to work since then, nor does he expect to be able to return to work.  *Id.*  Therefore the motion in limine on this issue, ECF No. 91, is denied as moot.

## X.

Defendants also ask this Court to preclude Plaintiffs' expert Dr. Reagles from offering any opinions or testimony concerning Plaintiffs' claims for alleged loss of household services.[7] Defendants argue Dr. Reagles' report and deposition testimony failed to establish both the baseline nature and extent of services provided by Mr. Thibodeaux prior to diagnosis and any reduction in the extent or change in the nature of such services after his diagnosis.  ECF No. 92. Defendants assert Dr. Reagles conceded his opinion was solely based on national published average replacement costs for household services rendered by individuals within Mr. Thibodeaux's demographic bracket.  *See* ECF No. 92, Ex. B, Dr. Reagles Depo. Tr. at 104:16-106:11.  Further, Defendants highlight what they characterize as contradiction in Dr. Reagles' report, where he opined in one section that Mr. Thibodeaux is "limited in his capacity to perform certain tasks within the home" and in another section where he stated "his capacity to perform any valuable household work is, for all intents and purposes, gone."  *See* ECF No. 92, Ex. A, Report of Dr. Reagles at 21, 25.

Plaintiffs argue expert reliance on this type of data, the "American Time Use Survey" based on Department of Labor statistics, is permitted under Federal Rules of Evidence 702 and

---

[7] Mot. in Lim. re Loss of Household Services, ECF No. 92.  Plaintiffs' response brief was filed as ECF No. 105.

703.  ECF No. 105.  Defendants did not argue the data is not reliable, but rather that the report did not rely on information that is idiosyncratic to Mr. Thibodeaux.  *Id.*  In his deposition, Dr. Reagles stated such characteristics—for example, time spent traveling—would be too variable to systematically include in an accurate representation, and consequently why he felt a normative value was more appropriate.  *See* ECF No. 105, Ex. 1, Dr. Reagles Depo. Tr. at 106:7-107:11.

Pursuant to Federal Rule of Evidence 702, an expert may testify in the form of an opinion or otherwise if the testimony is based on sufficient facts or data.  The *American Time Use Survey* is based on "nationally representative estimates of how, where, and with whom Americans spend their time, and is the only federal survey providing data on the full range of nonmarket activities, from childcare to volunteering."  *See* U.S. Bureau of Labor Statistics, American Time Use Survey: Overview (2019), https://www.bls.gov/tus/overview.htm#1.  Dr. Reagles used the *Dollar Value of a Day* publication to conduct his calculations.  *See* ECF No. 105, Ex. 1, Dr. Reagles Depo. Tr. at 105:2-105:21.  The publication reports the time expenditure for household work and other activities of daily living that were studied as a part of the U.S. Department of Labor, Bureau of Labor Statistics, American Time Use Survey.  *See* K. Krueger & J. Ward*, Dollar Value of a Day: 2016,* Expectancy Data, Inc. Shawnee Mission, KA, 2017.  Defendants' arguments go to weight, rather than admissibility, of the evidence, and they may argue these points during trial.  Therefore Defendants' motion in limine to exclude testimony from Dr. Reagles regarding the alleged loss of household services, ECF No. 92, is denied.

## XI.

Finally, Defendants ask this Court to preclude Plaintiffs' damages expert, Colin Linsley, Ph.D., from offering opinions and testimony concerning (1) the alleged loss of past wages, (2) the alleged loss of future earning capacity, (3) no loss of fringe benefits, and (4) Mr.

Thibodeaux's work life expectancy.[8]  Plaintiffs' respond that Dr. Linsley will not be offering testimony on the first three issues, and they will be held to that position.  ECF No. 108.  As to the fourth issue regarding Mr. Thibodeaux's work life expectancy, Defendants argue Dr. Linsley improperly relied on Mr. Thibodeaux's own wishes to work until the age of 71 to calculate work life expectancy, instead of reliable facts or data.  *See* ECF No. 93, Ex. A, Dr. Linsley Depo. Tr. at 41:8-43:16.  Further, Defendants argue Dr. Linsley's projection of age 71 conflicts with Dr. Reagles projection of age 66.6, which is based on statistics published by the U.S. Department of Labor.  *See id.*, Ex. B, Report of Dr. Reagles at 26.

Regarding work life expectancy, Plaintiffs argue it is permissible under Federal Rule of Evidence 703 for an expert to rely on Plaintiffs' own stated intention to work.  ECF No. 105.  Mr. Thibodeaux stated he intended to work until the age of 71 because that would be the projected completion of his youngest child's college degree.  *Id.*  Plaintiffs further assert that any potential discrepancies between the experts are permissible and go more to weight, not admissibility.  *Id.*

Defendants motion in limine, ECF No. 93, is denied.  The first three issues raised in the motion are moot.  For the fourth issue, under Federal Rule of Evidence 703, Dr. Linsley may "base an opinion on facts or data in the case."  Defendants' do not cite any authorities suggesting that Dr. Linsley's consideration of Mr. Thibodeaux's own intention to work was inappropriate.  Nor could it be.  Mr. Thibodeaux's intentions may be different from the national statistics, but those are estimates, not absolutes.  And the world is filled with people who want to, or who must, work into their seventies.   Mr. Thibodeaux's intentions may be unrealistic, they may be unachievable, they may even be mostly wishful thinking, but they are not irrelevant, and he has a

---

[8] *See* Mot. in Lim. re Damages, ECF No. 93.  Plaintiffs' response brief was filed as ECF No. 108.

reasonable explanation of why he plans to work that long.   The question of whether Mr. Thibodeaux's own intention to work is sufficient to establish his work-life expectancy goes to the weight and not admissibility of the evidence.   That is for the jury to decide.

### B.  Plaintiffs' Omnibus Motion in Limine

Plaintiffs filed on omnibus motion in limine regarding four issues.[9]   For the reasons discussed below, the motion is granted in part and denied in part.

### I.

First, Plaintiffs' ask this Court to apply D.C. law to the negligence claims against Defendant Edward Dunne, M.D.   ECF No. 83.   Plaintiffs assert that tort claims in Maryland apply *lex loci delicti*, the substantive law of the state where the tort was committed.   *See Lewis v. Waletzky*, 576 F. Supp. 2d 732, 735 (D. Md. 2008) (citing *Lab Corp. v. Hood*, 911 A.2d 841, 844 (Md. 2006)).   Plaintiffs allege Mr. Thibodeaux, a Washington D.C. resident, engaged in a physician-patient relationship with Dr. Dunne, and all acts and omission that Plaintiffs allege were breaches of the standard of care occurred in his D.C. medical office.   ECF No. 83.   Mr. Thibodeaux was Dr. Dunne's patient for approximately four months until he was referred for an elective procedure to a different medical practice that accepted Plaintiffs' insurance.   *Id.* Plaintiffs further allege that the injury proximately caused by Dr. Dunne's negligence occurred in D.C., where Plaintiffs reside.   *Id.*

Dr. Dunne does not contest that D.C. law should apply to the claims against him, except with respect to damages.   *See* Def.'s Opp'n, ECF No. 98.   Dr. Dunne argues that application of D.C. damages law to Plaintiffs' claims are contrary to and violate Maryland public policy under Maryland's Health Care Malpractice Claims Act.   *Id.*; *see* Md. Code Ann. Cts. & Jud. Proc. §§ 3-

---

[9] *See* Pl.'s Omnibus Mot. in Lim., ECF No. 83.   Defendants' response briefs were filed as ECF Nos. 98, 110, 111, and 112.

2A-01, *et. seq.* ("MHCMCA").  Dr. Dunne argues the MHCMCA § 3-2A-09(b)-(c) establishes limitations on recoverable non-economic damages, and the limitation is "embedded in the bedrock of Maryland law."  *Burks v. Allen*, 192 A.3d 847, 880 (Md. Ct. Spec. App. 2019); *see* Def.'s Opp'n, ECF No. 98.   Because D.C. law has no limitations on damages recoverable by medical malpractice plaintiffs, Dr. Dunne argues that Maryland's public policy exception to the *lex loci delicti* choice of law doctrine should apply.  *See* Def.'s Opp'n, ECF No. 98.

I agree that D.C. law is appropriate under Maryland's *lex loci delicti* choice of law doctrine.  *See Lewis v. Waletzky*, 576 F. Supp. 2d at 735.  But there is no basis to exclude the damages claims based on Maryland public policy as Dr. Dunne requests.  This Court has held the "MHCMCA only applies to suits against Maryland-licensed health care providers" and does not apply to out-of-state health care providers.  *Logue v. Patient First Corp.*, No. CV JKB-17-2097, 2017 WL 4342070 (D. Md. Sept. 27, 2017); *see Rosenberg v. Institute of the Pennsylvania Hosp.*, 535 A.2d 961, 962 (Md. Ct. Spec. App. 1988) (reversing dismissal of case against a Pennsylvania health care provider for failing to comply with the MHCMCA).  This is because the MHCMCA itself only applies to health care providers "licensed or authorized to provide one or more health care services in Maryland."  Md. Code Ann. Cts. & Jud. Proc. § 3-2A-01.  Here the MHCMCA does not apply as Dr. Dunne is licensed and practicing in D.C.  Although Dr. Dunne resides in Maryland, his place of residence does not place him within the ambit of the MHCMCA.

Defendants cite to *Lab Corp.*, which applied the public policy exception to *lex loci delicti* when North Carolina law did not permit parents to bring wrongful birth claims but Maryland law did.  *Lab Corp.*, 911 A.2d at 844; *see* Def.'s Opp'n, ECF No. 98.  Defendants also cite to *Lewis*, which held a plaintiff must follow the MHCMCA's pre-suit arbitration requirements in a case

where the alleged injury occurred in D.C.  *Lewis*, 576 F. Supp. 2d at 735; *see* Def.'s Opp'n, ECF No. 98.  *Lab Corp.* applied a public policy exception when the harm occurred in a state that did not recognize the particular claim, and *Lewis* applied part of the MHCMCA to a D.C. claim when the defendant physician was licensed and practicing in Maryland and Plaintiff lived in D.C.  *See Lab Corp.*, 911 A.2d at 844; *Lewis*, 576 F.Supp.2d at 735.  In the current case, D.C. permits damages claims unlike the claims in *Lab Corp.*, and Dr. Dunne practices in D.C. unlike the physician in *Lewis*.  Here applying D.C. law to all of Plaintiffs' claims against Dr. Dunne would not violate Maryland public policy, but to the contrary would be consistent with the statutory scope of the MHCMCA.  Therefore, Plaintiffs' request in their motion in limine to apply D.C. law to the claims against Dr. Dunne, ECF No. 83, is granted.

## II.

Plaintiffs ask this Court to exclude alleged hearsay statements by Sarah Olson, NP that may be used to support a theory that Mr. Thibodeaux knew about and failed to inform Defendants about blood in his urine (hematuria) after Defendants' 2014 care.  ECF No. 83. When Mr. Thibodeaux realized he had forgotten his medication for Flomax while on a work trip in Wisconsin, he went to a walk-in clinic to get a prescription.  *See* ECF No. 83, Ex. 1, Thibodeaux Depo. Tr. at 110:17-111:2.  Mr. Thibodeaux provided a urine sample and was discharged with a UTI diagnosis and prescription for antibiotics.  *See id.*, Ex. 2, Report of S. Olson, N.P.  Plaintiffs' allege the urinalysis did not reveal hematuria until after the Plaintiff left the clinic.  *Id.*  Nurse Olson filled out a portion of the medical record during the visit and finished the rest of the progress note two days later, including the section regarding the hematuria.  *Id.*  It is disputed whether Mr. Thibodeaux knew about the hematuria.  Although Defendants repeatedly subpoenaed Nurse Olson for deposition, no deposition was taken.  ECF

17

No. 83.

Plaintiffs argue the medical records have not been authenticated and are non-admissible hearsay.  *Id.*  Further, Plaintiffs contend the records are irrelevant and inadmissible under Federal Rule of Evidence 401 and any limited relevance is outweighed by the prejudice under Federal Rule of Evidence 403.  *Id.*

Defendants argue the medical records have been properly authenticated under Federal Rule of Evidence 902(11) as a certified domestic record of a regularly conducted activity.  *See* Defs.' Opp'n, ECF No. 110.  Further, Defendants argue the records are admissible under Federal Rule of Evidence 803(6), which permits evidence of a record of a regularly conducted activity. *Id.*  Defendants argue the medical records are relevant to the current case and admissible under Federal Rule of Evidence 401 as they go directly to Mr. Thibodeaux's knowledge of blood in his urine and the clinic trip occurred five weeks after he canceled an elective cystoscopy.  *Id.* Defendants also assert that the urinalysis results likely were available during Plaintiff's visit and showed he had tested positive for blood.  *Id.*, Ex. B, Report of S. Olson, N.P.

Although one part of the record, the "Progress Note" section, was written two days after the appointment, the records are both relevant under Federal Rule of Evidence 401 and admissible as a hearsay exception under Federal Rule of Evidence 803(6) as a record of a regularly conducted activity.  To the extent Mr. Thibodeaux's comments recorded in the note are hearsay within hearsay, they are admissible as a statement made for medical diagnosis under Federal Rule of Evidence 803(4), while the note is a record of a regularly conducted activity under Federal Rule of Evidence 803(6), and its admissibility is not barred by Federal Rule of Evidence 805.  Plaintiffs' argument that the probative value of the record is substantially outweighed by prejudice under Federal Rule of Evidence 403 as it may confuse the jury fails.

The parties will have the opportunity during trial to argue what the medical record shows and does not show.  Therefore Plaintiffs' request in their motion in limine to exclude statements by Nurse Olson, ECF No. 83, is denied.

## III.

Plaintiffs ask this Court to preclude Defendants from raising the defenses of contributory negligence and assumption of risk in their opening statement.  ECF No. 83.  Plaintiffs argue there is no anticipated evidence to support the submission of these issues to the jury, and that once stated, the prejudice could not be overcome.  *Id.*  Plaintiffs argue that under Maryland law, the defense of contributory negligence may not be brought unless there is some evidence "that the injured party acted, or failed to act, with knowledge and appreciation, either actual or imputed, of the danger of injury which his conduct involves."  *Barbosa v. Osborne*, 183 A.3d 785, 791 (Md. Ct. Spec. App. 2018) (quoting *Thomas v. Panco Mgmt. of Maryland, LLC*, 31 A.3d 583, 602 (Md. 2011)).  Similarly, under D.C. law, Plaintiffs argue there is no evidence of failure to cooperate with Dr. Dunne.  *Id.*

Defendants argue that Mr. Thibodeaux was contributorily negligent, given that Plaintiffs' standard of care experts opined that Defendants were required to perform a cystoscopy on him, and he voluntarily canceled two cystoscopies recommended by Dr. Sterling.  *See* Defs.' Opp'n, ECF No. 111, Ex. A, Report of M. Palse, M.D.  Further, Defendants allege Mr. Thibodeaux experienced an additional hematuria episode on his trip to Wisconsin and failed to disclose it to his primary care physician or to Dr. Sterling.  *See* Defs.' Opp'n, ECF No. 111.  Defendants argue this evidence is sufficient to fulfill Maryland's burden of proof requirement for asserting their contributory negligence defense.  *Id.*  And they  argue they were not required to have told Mr. Thibodeaux that he could have cancer as a prerequisite to asserting  contributory negligence.  *Id.*;

*see Myers v. Estate of Alessi*, 560 A.2d 59 (Md. Ct. Spec. App. 1989).  In *Myers*, a patient failed

to follow her physician's instructions to return for follow-up treatment if her sore throat and

other mild symptoms did not improve.  The court rejected Plaintiff's argument that since she did

not know she had cancer on her tongue, she was not properly informed of the risks of failing to

return for follow-up treatment and was not contributorily negligent.  *Myers*, 560 A.2d at 63.

Contributory negligence is an affirmative defense that bars any recovery if a Plaintiff is

found to have contributed to their injury in any way.  *See Harrison v. Montgomery County Bd. of*

*Educ.*, 456 A.2d 894 (Md. 1983).  In *Barbosa*, the Maryland Court of Special Appeals surveyed

Maryland appellate opinions and summarized them by stating that contributory negligence

applies when a patient receives treatment and instructions from a health care provider but does

not follow, or unreasonably delays in following, the instructions.  It explained:

> Our appellate courts have upheld the submission of a contributory negligence
> issue to a jury, in medical malpractice cases, but only where there was evidence
> adduced that the plaintiff had received treatment from a health care provider, that
> he had then been given instructions by that provider, and that he had not followed,
> or unreasonably delayed in following, those instructions. *See, e.g.*, *Moodie v.
> Santoni*, 441 A.2d 323 (1982) (holding that the issue of contributory negligence
> was properly submitted to the jury, where the physician had prescribed a drug
> treatment for the plaintiff's tuberculosis and stressed the importance of reporting
> any symptoms related to side effects, but the plaintiff had purportedly failed to do
> so and subsequently died of that disease); *Hopkins v. Silber*, 785 A.2d 806
> (2001) (holding that the issue of contributory negligence was properly submitted
> to the jury, where, after the plaintiff had penile implants surgically implanted and
> was advised by his surgeon to refrain from sexual intercourse for the next six
> weeks, he had ignored that advice and subsequently suffered resultant
> complications); *Kassama v. Magat*, 767 A.2d 348 (2001) (holding that the issue
> of contributory negligence was properly submitted to the jury, where the pregnant
> plaintiff ignored her obstetrician's instruction to obtain, "as soon as possible," a
> test to detect a genetic defect in her fetus, and subsequently her child was born
> with Down's Syndrome), *aff'd*, 792 A.2d 1102 (2002); *Smith v. Pearre*, 625 A.2d
> 349 (1993) (upholding a jury instruction "that, if a patient is told by the doctor to
> return and fails to [do so], then he may be charged with contributory negligence;
> if the doctor does not tell a patient to return, then the patient is not contributorily
> negligent"); *Myers v. Estate of Alessi*, 560 A.2d 59 (1989) (holding that the issue
> of contributory negligence was properly submitted to the jury, where the

> plaintiff had visited her physician, complaining of a sore throat, and then been advised, by him, to return if her condition did not improve, but did not do so for six months, by which time she was suffering from cancer of the tongue); *Chudson v. Ratra*, 548 A.2d 172 (1988) (holding that the issue of contributory negligence was properly submitted to the jury, where the plaintiff had felt a lump on her right breast, was "under specific and repeated instructions" from her physician "to report back if the lump she felt did not disappear," but she did not do so and thereafter died of breast cancer).

*Barbosa*, 183 A.3d at 791.  Significantly, in each of these cases contributory negligence was appropriate where the patient disregarded a risk or failed to follow instructions *with respect to the eventual adverse outcome*.

In addition, the court in *Barbosa* found that Defense counsel's consistent hammering of the unsupported defense of contributory negligence was so prejudicial that it likely affected the verdict and the trial court's allowance of the defense constituted reversible error, even when Defendants were found not to have breached the standard of care.  *Barbosa*, 183 A.3d at 797–98, ("[T]he repeated invocation, by the defense, of Mr. Barbosa's alleged negligence in failing to seek immediate treatment that pervaded every aspect of the trial below.  It was raised, by the defense, in opening statement; during the cross-examination of the Barbosas' lay and expert witnesses; then, during the direct examination of Dr. Osbourne's three expert witnesses; and, finally, stressed in closing argument, whereupon the jury received oral and written instructions as to the relevance of Mr. Barbosa's alleged negligence.")

In this case, Defendants proffer that the affirmative defense of contributory negligence is based on two reasons.  *See* Defs.' Opp'n, ECF No. 111.  First, that Mr. Thibodeaux canceled two cystoscopies which would have revealed his renal cancer.  *Id.*  Second, that he did not tell his primary care providers about an episode of hematuria while he was traveling in Wisconsin and went to a walk-in clinic.  *Id.*  As proffered, neither supports the affirmative defense of contributory negligence.

As to the cystoscopies, this procedure was elective and to treat what was diagnosed as a benign condition that Mr. Thibodeaux was told could be managed with medication.  In canceling these surgeries, he did not act or fail to act "with knowledge and appreciation, either actual or imputed, of the danger of injury which his conduct involves" with respect to his undiagnosed cancer.  *Barbosa*, 183 A.3d at 791.  Likewise, the fact that Plaintiffs' expert believes that the cystoscopies should have been performed has no bearing on whether Mr. Thibodeaux disregarded known danger regarding his renal cancer.

For the 2014 hematuria that Mr. Thibodeax allegedly failed to disclose to his primary care doctors, Defendants have not proffered any facts to indicate that he was told to return to them or report such incidents.  In *Myers*, a case relied on by Defendants, the court held a patient was not required to know they had developed cancer to be found contributorily negligent.  *Myers*, 560 A.2d at 62.  But in that case the patient did not return to the doctor's office per the doctor's instruction.  *Id.* ("[S]he admitted that she did have a discussion and that he told her to return if her throat was no better.  She never returned."); *see also Smith v. Pearre*, 625 A.2d 349, 358 (Md. Ct. Spec. App. 1993) ("[I]f a patient is told by the doctor to return and fails to, then he may be charged with contributory negligence; if the doctor does not tell a patient to return, then the patient is not contributorily negligent.").  Here Defendants have not proffered that Mr. Thibodeaux ignored a similar instruction.  In fact, it appears that he went to the walk-in clinic to obtain a prescription *to comply with* his doctor's orders.  *See* ECF No. 83, Ex. 1, Thibodeax Depo. Tr. at 110:17-111:2.  Moreover, it is disputed whether Mr. Thibodeaux knew he experienced another episode of hematuria following his 2014 care.  *Id.*

Defendants argue that only a minimal amount of evidence of contributory negligence is needed to submit the issue to a jury.  *See* Defs.' Opp'n, ECF No. 111.  This is true.  In *Moodie v.*

*Santoni*, the Court of Appeals of Maryland stated, "Maryland has gone about as far as any state in holding that meager evidence of negligence is sufficient to carry a case to the jury."  441 A.2d 323, 326 (Md. 1982) (citing *Fowler v. Smith*, 213 A.2d 549 (Md. 1965).  But the *Moodie* Court continued to quote its discussion in *Fowler* where it explained:

> [T]he rule as above stated does not mean, as is illustrated by the adjudicated cases, that all cases where questions of alleged negligence are involved must be submitted to a jury.  The words 'legally sufficient' have significance.  They mean that a party who has the burden of proving another party guilty of negligence, cannot sustain this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value.

*Moodie v. Santoni*, 441 A.2d at 326 (quoting *Fowler v. Smith*, 213 A.2d 549 (1965)).  Here Defendants have not yet demonstrated that they can meet that minimal bar to support the affirmative defense of contributory negligence.

Generally, attorneys may mention anything in their opening statements that they in good faith believe will be supported by admissible evidence.  *See Lai v. Sagle*, 818 A.2d 237, 244 (2003) ("It has been observed that the primary purpose of an opening statement is to apprise, with reasonable succinctness, the trier of fact of the questions involved in the case it is about to hear, and what the parties expect to prove, so as to prepare the trier of fact for the evidence to be adduced.").  Defendants have not identified a legally sufficient basis to support a good faith belief that the trial will produce evidence of contributory negligence to justify mentioning it in their opening statement.  For this reason, and given the prejudice that may occur to the Plaintiffs if Defendants are allowed to inform the jury of an unsupported claim for contributory negligence, *see Barbosa*, 183 A.3d at 797–98, I find it appropriate at this stage of the proceedings to grant Plaintiffs' request to exclude Defendants from mentioning the affirmative defense of contributory negligence in their opening statements.  However, if evidence is

introduced during trial that would support this defense, Defendants may request that the affirmative defense of contributory negligence be included in their closing arguments, final jury instructions, and special verdict sheet.  Therefore, Plaintiffs request in their motion in limine that Defendants be precluded from mentioning the defense of contributory negligence in their opening statements, ECF No. 83, is granted.

## IV.

Finally, Plaintiffs' asked this Court to preclude the defense and their witnesses from introducing "prior good acts testimony" regarding defendant physicians and their practice, unless prior bad acts such as negative patient comments and prior lawsuits also are admitted into evidence.  ECF No. 83.  Plaintiffs argue Federal Rule of Evidence 404(a)(1) prohibits evidence of a person's character or character trait to prove that, on a particular occasion, the person acted in accordance with the character or trait.  *Id.*  Plaintiffs assert evidence of community service, awards, or being loved by patients is inadmissible and irrelevant under Federal Rule of Evidence 401 and any limited relevance is outweighed by prejudice under Federal Rule of Evidence 403. *Id.*

Defendants argue Plaintiffs identified no specific "prior good acts" that they are attempting to preclude.  *See* Defs.' Opp'n, ECF No. 112.  Defendants state they do not intend to present defendant physicians as "great humanitarians" or "models of excellence."  *Id.*  They argue Plaintiffs blanket exclusion of unspecified and undefined "prior good acts" is overbroad and that Plaintiffs may object and address any issues on a case-by-case basis with the Court outside of the jury's presence.  Further, Defendants assert any mention of defendant physicians' past medical lawsuits or settlements would be unfairly prejudicial and inadmissible.  *Id.*; *see Little v. Schneider*, 73 A.3d 1074, 1081 (Md. 2013).

Plaintiffs do not cite to any specific examples of "prior good acts" performed by defendant physicians that they feel should be precluded. However, I agree generally that eliciting testimony about prior good or bad acts could be prohibited by Federal Rule of Evidence 404(a)(1), depending on the specifics. Any objections Plaintiffs may have during direct examination can be addressed on a case-by-case basis. Therefore Plaintiffs' request to preclude the Defendants from eliciting testimony about prior good acts in their motion in limine, ECF No. 83, is denied without prejudice at this time. Defendants are cautioned, however, that should there come a time during trial that they intend to introduce evidence of the kind that the Plaintiffs have characterized as "prior good acts," they should raise this with the Court outside the presence of the jury before offering it into evidence.

## Conclusion

This Memorandum Opinion and Order addressed eleven of Defendants' motions in limine to preclude evidence, testimony, and Plaintiffs' informed consent claim. Five of these motions are denied as moot and the remaining motions are denied. Plaintiffs' motion in limine raised four evidentiary and choice-of-law issues. Plaintiffs' requests to exclude medical records and any evidence of Defendants' prior good acts are denied. Plaintiffs' requests to apply D.C. law to the claims against Dr. Dunne and to preclude the Defendants' from mentioning contributory negligence and assumption of risk in their opening statements are granted. Many of the issues raised by Plaintiffs and Defendants that were denied went to the weight, rather than admissibility, of the evidence, and the parties may argue these points at trial.

| | |
|---|---|
| __July 27, 2020__ | _____/S/_____ |
| Date | Paul W. Grimm |
| | United States District Judge |