IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAYMOND THIBODEAUX, *et. ux.* | * | |
| Plaintiffs, | * | |
| v. | * | Case No. 8:17-cv-01352-PWG |
| KATHLEEN STERLING, M.D., *et. al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiffs Raymond Thibodeaux and Emily Wax brought this medical malpractice action against Defendants for allegedly failing to timely diagnose Mr. Thibodeaux's cancer. The matter is scheduled for trial in 2021. This Memorandum Opinion and Order addresses Defendants' motion to exclude Plaintiffs' experts' testimony on the issue of causation.[1] For the reasons discussed below, Defendants' motion is DENIED.[2]

## Background

Mr. Thibodeaux initially saw Defendant physicians in the summer of 2014 after finding blood in his urine. Am. Compl. at 4, ECF No. 31. Plaintiffs, a married couple, allege that Drs. Edward Dunne, Kathleen Sterling, and Nizamuddin Maruf did not order or recommend

---

[1] The motion is fully briefed. *See* ECF Nos. 70, 76, 79. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018). The parties filed twelve other motions in limine, which I addressed separately in a Memorandum Opinion on July 27, 2020. *See* ECF No. 122, available at *Thibodeaux v. Sterling*, No. 8:17-CV-01352-PWG, 2020 WL 4286874 (D. Md. July 27, 2020).

[2] Also pending is Plaintiffs' motion for leave to file a supplemental opposition to Defendants' pending motion to exclude Plaintiffs' experts' causation opinions. ECF No. 119. Because I deny Defendants' motion, Plaintiffs' request to file a supplemental opposition is denied as moot.

diagnostic procedures to screen for cancer in violation of professional standards of care. *Id.* at 2, 8. Mr. Thibodeaux ultimately was diagnosed with bladder cancer and metastatic kidney cancer in the fall of 2015. *Id.* at 6.

Plaintiffs allege medical negligence, lack of informed consent, and loss of consortium. *Id.* at 7–11. Defendants contend they acted in accordance with professional standards of care. *See* Defs.' Answers, ECF Nos. 32, 42. Both Plaintiffs and Defendants marshal expert witnesses to support their positions. Ahead of trial, Defendants filed the pending motion in limine to exclude Plaintiffs' experts' testimony on the issue of causation.

## Discussion

At issue is how the parties' experts arrived at their divergent theories for the progression of Mr. Thibodeaux's kidney cancer. Plaintiffs argue that had Mr. Thibodeaux's kidney cancer been diagnosed between June and September 2014, when he first saw Defendants, the cancer probably would have been treatable surgically and Mr. Thibodeaux probably would have made a full recovery. *See, e.g.*, Pls.' Resp. at 3, ECF No. 76. Based on the opinion of their expert, Dr. Anthony Mega, Defendants contend that Mr. Thibodeaux's cancer likely had already metastasized, or spread to other parts of the body, by that timeframe in 2014 and therefore would have carried the same prognosis as it did at the time of diagnosis in October 2015. Def. Aff. Anthony Mega at 13, Attach. 2, ECF No. 70. Plaintiffs plan to offer causation testimony by three physicians: Drs. Andrew Schneider, Ralph Duncan, and Barry Singer. Defendants argue the causation testimony and opinions are inadmissible under *Daubert v. Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702, because they rely on outdated cancer statistics, do not incorporate relevant medical literature, and do not sufficiently consider factors specific to Mr. Thibodeaux's disease. *See* Mem. Supp. Mot. at 1, Attach. 1, ECF No. 70.

Defendants contend that Dr. Schneider overly and improperly relied on certain data in the Cancer Staging Manual, published by the American Joint Committee on Cancer ("AJCC"). *Id.* at 7. The data come from the National Cancer Database for the years 2001–02. Ex. B, ECF No. 70. The data show observed survival rates for patients with kidney cancer, grouped by cancer stage at diagnosis. *Id.* For instance, patients diagnosed with kidney cancer at stage IV—the worst prognosis—had a one-year survival rate of 34 percent and a five-year survival rate of 8 percent. *Id.* Based on those figures, Dr. Schneider concluded that if Mr. Thibodeaux already had stage IV kidney cancer in 2014, when he was first seen by Defendants, then he probably would not have survived until he was ultimately diagnosed with stage IV cancer in 2015. Aff. Schneider at 15, Ex. 1, ECF No. 76. Using the survival rates, as well as his experience and training, Dr. Schneider stated in his deposition that Mr. Thibodeaux's kidney cancer probably metastasized in the intervening year between his medical visits, likely by June 2015. Ex. A at 63–66, ECF No. 70.

Defendants contend this theory is not properly founded and ignores the possibility of microscopic metastatic disease. Defs.' Reply at 4, 6, ECF No. 79. Defendants argue Dr. Schneider should have weighed factors such as vascular invasion (the presence of tumor cells in blood vessels), tumor necrosis (tumor cell death), and other pathologic data. Aff. Mega at 7, 12. Defendants say staging is meant to be used prospectively following diagnosis, not retrospectively to analyze a tumor's development. *Id.* at 16. Additionally, Dr. Mega pointed to a recent study showing improved survival rates for patients with untreated metastatic kidney cancer, challenging Dr. Schneider's assumption that Mr. Thibodeaux likely would not have survived had his cancer already reached stage IV by 2014. *Id.* at 17–18.

Regarding Dr. Duncan, Defendants attack his opinions as *ipse dixit*, given that he formed

them based on his education, training, and experience, rather than using medical literature or outside data. Mem. Supp. Mot., Attach. 1 at 14, ECF No. 70. Defendants point to *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), which instructed that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." Defendants also raise some of the same complaints with Dr. Duncan's testimony as they do with Dr. Schneider's, arguing he should have incorporated pathological factors into his analysis beyond primary tumor size. Aff. Mega at 12.

As for Dr. Singer, Defendants argue his methodology to determine cancer progression—using absence of symptoms, passage of time, and tumor aggressiveness—was untrustworthy and contradicted by Mr. Thibodeaux's clinical history, oncology guidelines, and peer-reviewed literature. Mem. Supp. Mot., Attach. 1 at 12, ECF No. 70. Defendants say that, like Dr. Schneider, Dr. Singer solely relied on the AJCC survival data for outside information. *Id.* Defendants point to two Michigan cases in which Dr. Singer's causation opinions were excluded. *Id.* at 16.

In response, Plaintiffs argue that Defendants' objections go to the weight of the evidence, not its admissibility. Pls.' Resp. at 1, ECF No. 76. The stage of Mr. Thibodeaux's kidney cancer between June and September 2014 would have been established through medical imaging and pathologic diagnosis. Plaintiffs argue they should not be penalized for the dearth of data caused by Defendants' failure to order those procedures. *Id.* at 9.

Dr. Schneider filed an affidavit in response to Defendants' motion, reiterating how he employed the statistics in the AJCC, which he called "the gold standard for staging cancer." Aff. Schneider at 3, Ex. 1, ECF No. 76. He said the survival rates can be used both prospectively and retrospectively to understand the progression of a patient's cancer. *Id.* at 12. Defendants'

4

contention that the information is outdated is belied by the manual itself, which says the seventh edition (which Dr. Schneider relied on) should be used for cancer patients diagnosed after 2010. *Id.* at 14.  The eighth edition (which Defendants noted no longer contains the same kidney cancer survival curves) should be used for patients diagnosed after 2017, according to the manual itself. *Id.* at 15–16.  Finally, Dr. Schneider argued the new medical literature cited by Defendants lacks the reliability and rigorous review of the AJCC manual.  *Id.* at 17.

Plaintiffs did not address the objections to Dr. Duncan's testimony in their response brief, nor the objections to Dr. Singer's methodology.  Regarding Dr. Singer, Plaintiffs distinguish the Michigan cases in which his testimony was excluded.  In *Edry v. Adelman*, Dr. Singer had formed an opinion contrary to the AJCC manual, not based on it.  786 N.W.2d 567, 639–40 (Mich. 2010).  In *Estate of Peyton v. Novi Internal Med. & Pediatrics*, 2017 WL 1367109 at *2, *4 (Mich. Ct. App. 2017), there was no pathologic staging evidence collected at any time.

Expert testimony must be relevant and reliable to be admissible.  *Daubert v. Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  This Court's gatekeeping task "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Id.* at 592–93.  The inquiry under Federal Rule of Evidence 702, amended after *Daubert*, is meant to be "flexible."  *Id.* at 594.

Dr. Schneider's and Dr. Singer's use of survival rates published in the AJCC is sufficiently founded on valid scientific principles to reach the jury.  Other courts have found similar backward-looking analyses of cancer staging, based on the same information, to be admissible and persuasive.  *See, e.g.*, *Rhodes v. United States*, 967 F. Supp. 2d 246, 306–07 (D.C. 2013) (allowing experts' use of survival rates to determine when a plaintiff's breast cancer

metastasized in a bench trial). *See also Tyler,* ex rel. *Tyler v. Harper*, 2010 WL 1408963 at *7 (D. Minn. 2010) ("[W]hile there appears to be some development in the methods for kidney cancer staging, the Court is not persuaded that the . . . staging system is no longer scientifically reliable.").

Regarding Dr. Duncan's lack of citation to medical literature, there is no such requirement in the Federal Rules of Evidence. *See, e.g.*, *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999) ("[W]e do not believe that a medical expert must always cite published studies on general causation in order to reliably conclude that a particular object caused a particular illness."). While the so called "*Daubert* factors do include consideration of whether the methodology employed by an expert has been subject to peer review (which usually involves analysis of medical literature, in malpractice cases), the Supreme Court has made it clear that not all of the *Daubert* factors will be applicable to every case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) ("[A]s the Court stated in *Daubert,* the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case.") Thus, while citation to scientific literature may bolster the credibility of expert testimony, its absence alone does not necessitate exclusion of an otherwise reliable opinion by a qualified witness. *See, e.g.*, *Tyree v. Boston Sci. Corp.*, 54 F. Supp. 3d 501, 569 (S.D.W. Va. 2014). As a board-certified urologist who regularly evaluates patients like Mr. Thibodeaux, Dr. Duncan may rely on his medical knowledge and Mr. Thibodeaux's records as bases for forming his opinion.

Therefore, Defendants' motion in limine to exclude the Plaintiffs' experts' opinions on causation, ECF No. 70, is denied. Although Defendants and their experts point to what they believe are weaknesses in conclusions drawn by Plaintiffs' experts, any deficiencies go to the

weight, if any, that the jury should accord the Plaintiffs' experts, and should be revealed to the jury through cross-examination and presentation of contrary evidence. *See Daubert*, 509 U.S. at 596. The evidence Defendants seek for exclusion is sufficiently reliable and relevant under *Daubert* and its progeny, as well as Federal Rule of Evidence 702, and the testimony is no more likely to confuse the jury than typical expert opinions in a complex medical malpractice case.

## Conclusion

Defendants move to exclude the causation opinions of Plaintiffs' experts. They point to what they view as weaknesses in the Plaintiffs' experts' methodology. But Plaintiffs' experts' testimony is sufficiently reliable and relevant under *Daubert* and its progeny, as well as Federal Rule of Evidence 702, to be presented to the jury. Therefore Defendants' motion, ECF No. 70, is denied. Defendants will have the opportunity to challenge the strength of this evidence during trial through cross-examination and presentation of contrary evidence.

## ORDER

For the reasons stated in this Memorandum Opinion and Order, it is this 26th day of August 2020, hereby ORDERED:

1. Defendants' Motion in Limine, ECF No. 70, is DENIED;

2. Plaintiffs' Motion for Leave to File a Supplemental Opposition to Defendants' Motion in Limine, ECF No. 119, is denied as moot.

                                                              /S/
                                            Paul W. Grimm
                                            United States District Judge